UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 06-CV-91-HRW

DAVID WAYNE BAKER                                                    PLAINTIFF

VS:                     **<u>MEMORANDUM OPINION AND ORDER</u>**

ALBERTO GONZALEZ, ET AL.                                       DEFENDANTS

\*\*\*   \*\*\*   \*\*\*   \*\*\*   \*\*\*

David Wayne Baker ("Baker") is an inmate confined at the Federal Correctional Institution-Ashland in Ashland, Kentucky ("F.C.I.-Ashland"), and he has filed a *pro se* civil rights complaint under 28 U.S.C. §1331 pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Baker asserts that the defendants have violated his civil rights by requiring a "co-pay" for providing health care, opening his legal mail, confiscating his presentence investigation report, and refusing his request to purchase sexually-explicit magazines. Baker seeks money damages and injunctive relief.

The Court screens civil rights complaints pursuant to 28 U.S.C. §1915A. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). As Baker is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in his complaint are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the Court may dismiss a case at any time if it determines the action (i) is frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted. 28 U.S.C. §1915(e)(2).

## BACKGROUND

On March 13, 2001, pursuant to a written agreement with the United States, Baker pled guilty to one count of distributing and receiving child pornography through interstate commerce in violation of 18 U.S.C. §2252(a)(2).  While on release pending sentencing, Baker's computer was seized by his probation officer and additional child pornography was found.  On October 31, 2001, pursuant to a written agreement with the United States, Baker agreed to plead guilty to a superseding indictment which added a second count for possession of child pornography in violation of 18 U.S.C. §2252(a)(5)(B).  On December 14, 2001, Baker was sentenced to a 135-month term of incarceration to be followed by a 3-year term of supervised release.  Baker filed no direct appeal. *United States v. Baker*, 01-CR-37, Southern District of Indiana.

On December 16, 2002, Baker filed a *pro se* motion to vacate or correct his sentence, which the trial court denied on May 7, 2003.  On July 1, 2003, Baker filed a motion seeking a certificate of appealability with the Seventh Circuit, which was denied on January 15, 2004.  *United States v. Baker*, 02-CV-1931, Southern District of Indiana [Record Nos. 1, 20, 22, 37 therein].

In his complaint, Baker asserts that one or more of the defendants violated federal law or his constitutional rights by (1) requiring a co-pay to provide certain health care services; (2) opening mail sent to him by the courts; (3) confiscating his presentence investigation report; and (4) refusing to permit him to purchase sexually-explicit magazines at his own expense.  The facts relevant to each of these claims will be set forth in the discussion below.

## DISCUSSION

### 1.    Health Care Co-payments.

On August 24, 2005, Baker and other inmates were informed that pursuant to 18 U.S.C.

-2-

§§4013(d), 4048, as implemented by Bureau of Prisons' ("BOP") Program Statement 6031.02, they would be required to pay $2 as a co-pay for certain medical services provided by the prison effective October 3, 2005. No fee is charged in a number of circumstances, including visits based on staff referrals, follow-up care, preventive care, emergency care, mental health care, and treatment of infectious disease. 28 C.F.R. §549.72. If a fee is charged and the inmate disputes the charge, the inmate may invoke the BOP's normal grievance process to challenge the imposition of the fee. 28 C.F.R. §549.73. The policy expressly provides that an inmate "will not be denied access to necessary health care because of an inmate's inability to pay the copay fee." 28 C.F.R. §549.74.

Baker challenged the policy on a number of constitutional and statutory grounds by timely invoking and exhausting the BOP's grievance process, which culminated in a denial by the BOP Central Office of Inmate Appeals on January 4, 2006. Baker then filed this complaint, in which he contends that application of the co-pay policy to him (1) violates his right to procedural due process under the Fifth Amendment by denying him a pre-deprivation hearing; (2) constitutes a "taking" without just compensation under the Fifth Amendment; (3) constitutes a Bill of Attainder; (4) violates the Double Jeopardy Clause; and (5) violates the Excessive Fines Clause. Each of Baker's assertions is meritless.

A.   Procedural Due Process

This Court has recently rejected a similar procedural due process challenge to booking fees charged by county jails in Kentucky. *Sickles v. Campbell County, Kentucky*, 439 F.Supp.2d 751, 756 (E.D.Ky. 2006). Further, the Court is in agreement with the numerous courts that have upheld the application of similar health care co-payment systems to inmates against challenges on procedural due process grounds. *See, e.g., Robinson v. Fauver*, 932 F.Supp. 639, 645 (D.N.J. 1996)

(rejecting equal protection and due process challenges to New Jersey's inmate co-payment system); *Johnson v. Dep't of Public Safety*, 885 F.Supp. 817, 821 (D.Md. 1995) (rejecting due process challenge). The BOP gave inmates advance notice of the policy's implementation, and affords them the opportunity to challenge the imposition of a fee in a particular instance, thus providing them with adequate procedural due process. *Scott v. Angelone*, 1992 WL 354598, *4 (9th Cir. 1992) (unpublished disposition) (finding advanced notice of program's implementation and right to file grievance with respect to particular charges constitute adequate pre- and post-deprivation procedures sufficient to protect inmate's due process rights under inmate co-pay program); *Gardner v. Wilson*, 959 F.Supp. 1224, 1229 (C.D.Cal. 1997) (same). *See also Revere v. Massachusetts General Hospital*, 463 U.S. 239, 245 n. 7 (1983) (while police must provide needed medical care to pretrial detainees, "[n]othing we say here affects any right a hospital or governmental entity may have to recover from a detainee the cost of the medical services provided to him.").

      B.    <u>Takings Clause</u>

The Sixth Circuit has already rejected the notion that such a policy could constitute a compensable "taking" under the Fifth Amendment. *See Bailey v. Carter*, 2001 WL 845446, *2 (6th Cir. 2001) ("The inmates next argue that their Fifth Amendment rights were violated because they were deprived of their property without just compensation. This "takings" claim is indisputably meritless. *Cf. Reynolds v. Wagner,* 128 F.3d 166, 180 (3d Cir. 1997) ("[I]n exchange for the fees, the inmates receive the benefit of health care, the value of which undoubtedly exceeds the modest fee assessed.")").

      C.    <u>Double Jeopardy</u>

Baker's assertion that the policy violates the Double Jeopardy Clause also fails. "Jeopardy,"

in the constitutional sense, involves a risk that is only implicated by criminal proceedings. *Breed v. Jones*, 421 U.S. 519, 528 (1975). Prison disciplinary proceedings are not equivalent to criminal charges, and hence present no Double Jeopardy concern. *Rusher v. Arnold*, 550 F.2d 896, 898 (3rd Cir. 1977). Application of the co-pay policy at issue here is plainly not the result or sanction arising from a criminal proceeding, but a rule applied uniformly to all inmates regardless of the crime committed.

In *United States v. WRW Corp.*, 986 F.2d 138 (6th Cir. 1993), the Sixth Circuit explained that the Double Jeopardy Clause may also be violated by a civil penalty provision, but only where Congress intended it to be criminal and punitive rather than civil and remedial, or where notwithstanding Congress' intent for the provision to be civil and remedial, its effect is wholly punitive. *Id.* at 140-41. The Court finds that none of the factors identified by the Supreme Court as enumerated in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963), would support the conclusion that the co-pay policy is criminal and punitive in nature. Baker's Double Jeopardy claim must therefore fail.

D.    Bill of Attainder and Ex Post Facto Clauses

Nor is the co-pay policy an impermissible Bill of Attainder or Ex Post Facto law.

The Constitution of the United States provides that "No State shall ... pass any Bill of Attainder, ex post facto Law, ..." U.S. Const. Art I, §10, cl. 1. A Bill of Attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Administrator of General Services*, 433 U.S. 425, 468 (1977). The prohibition is also implicated where the law designates the persons affected not by name, but by describing their past conduct. *Communist Party of the United States*

*v. Subversive Activities Control Board*, 367 U.S. 1, 86 (1961).  An Ex Post Facto law is one that "retroactively alters the definition of crimes or increases the punishment for criminal acts."  *Collins v. Youngblood*, 497 U.S. 37, 43 (1990).  Both prohibit the infliction of a "punishment" upon a citizen.  *United States v. O'Neal*, 180 F.3d 115, 122 (4th Cir. 1988).  Claims under the Double Jeopardy, Ex Post Facto, and Bill of Attainder clauses all utilize a functionally-identical test to determine whether the law in question imposes a "punishment."  *Id.* at 122 n.7.  Having determined that the co-pay policy is not "punishment" under the Double Jeopardy Clause, it likewise does not constitute "punishment" for purposes of the Bill of Attainder or Ex Post Facto clauses.  *Id.*; *see also Harris v. Ozmint*, 2006 WL 2471835, *5-6 (D.S.C. 2006) (South Carolina inmate co-pay program is not an unconstitutional Ex Post Facto law or Bill of Attainder because "charges for medical services ... are clearly not punitive in nature."); *Gardner v. Wilson*, 959 F.Supp. 1224, 1229 (C.D.Cal. 1997) (rejecting Ex Post Facto and Bill of Attainder claims).

E.     Excessive Fines and Cruel and Unusual Punishments Clauses

Courts have also routinely rejected arguments that fees similar to the one at issue here constitute either an excessive fine or a cruel or unusual punishment under the Eighth Amendment.  A payment to the government is only a "fine" if it constitutes "punishment for some offense."  *United States v. Bajakajian*, 524 U.S. 321, 327 (1998).  The co-pay is not a "fine" because it is paid not as a form of punishment, *see supra*, but as a very limited compensation for services rendered to the inmate, and is the same regardless of the offense for which the inmate has been incarcerated.  *See, e.g., Waters v. Bass*, 304 F.Supp.2d 802 (E.D.Va. 2004) (prison's daily $1 room-and-board fee does not violate Excessive Fines Clause).  In addition, even if the co-pays could be considered fines, they cannot be "excessive" when "they merely represent partial reimbursement of the prisoner's

daily cost of maintenance, something he or she would be expected to pay on the outside." *Tillman v. Lebanon*, 221 F.3d 410, 420 (3rd Cir. 2000).  Similarly, the collection of co-pays for medical services cannot constitute cruel and unusual punishment where it constitutes no "punishment" at all, *see WRW Corp.*, 986 F.2d at 140, and no deliberate indifference to an inmate's serious medical needs is shown where the inmate cannot be denied medical treatment notwithstanding his inability to pay.  28 C.F.R. §549.74; *Johnson v. Dep't of Public Safety*, 885 F.Supp. 817, 821 (D.Md. 1995); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir. 1985).

### 2. Opening of Legal Mail

On 24 or more occasions from August 20, 2003, to February 21, 2006, Baker received outside mail which had already been opened by prison staff.  Each piece of correspondence identified as its sender either the office of a federal court clerk or the office of a United States Attorney.  None of the mail pieces was stamped "Special Mail - Open only in the presence of the inmate," as described in 28 C.F.R. §540.2(c) and Program Statement 5265.11, 5800.10.  Baker complained of this practice of mailroom staff by commencing the prison grievance process on November 20, 2003, and his grievance was rejected finally by the BOP Central Office on April 29, 2004.  In his complaint, Baker alleges that the defendants have violated his rights under the Freedom of Speech and Access to the Courts Clauses of the First Amendment, the Due Process Clause of the Fifth Amendment, and the Public Trial Clause of the Sixth Amendment.

Most of Baker's mail claims are barred by the statute of limitations.  Because the civil rights statutes do not supply their own statutes of limitation, federal courts "borrow" the most analogous statute of limitation in the state where the events giving rise to the claim occurred.  *Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985).  The applicable Kentucky statute is the one-year statute of limitations

for residual tort claims found in K.R.S. 413.140(1)(a). *Collard v. Kentucky Board of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990); *University of Kentucky Bd. of Trustees v. Hayse*, Ky., 782 S.W.2d 609, 613 (1989). Because Baker filed his complaint in this action on June 6, 2006, any claim arising out of conduct on or before June 6, 2005, is time-barred.

Baker's complaint does allege that mailroom staff opened his legal mail on 4 occasions after June 6, 2005, and claims arising out of that conduct are not time-barred. However, Baker initiated the grievance process regarding treatment of his legal mail on November 20, 2003, and hence only claims arising before that date have been administratively exhausted as required by *Porter v. Nussle*, 534 U.S. 516 (2002). As for claims arising after that date, it appears that Baker cannot properly exhaust them within the time frames permitted by the BOP grievance process, and they therefore should be dismissed with prejudice.[1] *Woodford v. Ngo*, 126 S.Ct. 2378, 2387-88 (2006) (requirement that administrative remedies be exhausted can only be satisfied where plaintiff exhausts claims properly, meaning in compliance with terms and time frames established by agency). Baker's claims regarding treatment of his legal mail are thus barred by the statute of limitations, cannot be properly administratively exhausted, or both.

Baker's claim would also fail on the merits. In his grievance forms, Baker asserted that letters from courts and the United States Attorney should be treated as "special mail" under 28 C.F.R. §540.19(a) (which requires "special mail" to be opened only in the inmate's presence), even when the envelope is not designated on its face as "Special Mail - to be opened only in the presence

---

[1] Baker has not alleged that he should be excused from satisfying the exhaustion requirement on the grounds of futility, and any such assertion would have to be rejected. *McRae v. Corrections Corp. of America*, 2000 WL 302772 (6th Cir. 2000) (unpublished disposition) (prisoner may not abandon grievance process and then allege that completing the process would be futile); *Fisher v. Wickstrom*, 2000 WL 1477232 (6th Cir. 2000) (unpublished disposition).

of inmate" as provided by 28 C.F.R. §540.18(b).  Baker contended that 28 C.F.R. §540.18(b) only

permitted prison staff to treat legal mail as general correspondence when the face of the envelope

lacked both adequate identification of its source and the special mail marking.  Baker further

contended that, regardless of BOP regulations, Sixth Circuit law prevents opening any mail from

a court outside the prisoner's presence, citing *Sallier v. Brooks*, 343 F.3d 868, 877 (6th Cir. 2003)

("mail from a court constitutes 'legal mail' and cannot be opened outside the presence of [the

inmate]").  Baker misunderstands both the applicable BOP regulations and governing Sixth Circuit

law.

BOP mail regulations define "special mail" as including correspondence from a number of

sources in the state and federal government, including United States Attorneys and federal courts.

28 C.F.R. §540.2(c).  That provision expressly provides, however, that

> [f]or incoming correspondence to be processed under the special mail procedures
> (see §§ 540.18-540.19), the sender must be adequately identified on the envelope,
> **and** the front of the envelope must be marked "Special Mail--Open only in the
> presence of the inmate."

*Id*. (emphasis added).  By its terms, this regulation requires the face of the envelope to both

adequately identify the sender and be marked "Special Mail--Open only in the presence of the

inmate" before it must be processed as "special mail" under 28 C.F.R. §540.19(a).

Baker asserts that, notwithstanding the clear language of 28 C.F.R. §540.2(c), 28 C.F.R.

§540.18(b) requires "special mail" treatment where the face of the envelope includes either adequate

identification or the special mail marking.  That section provides:

> In the absence of either adequate identification or the "special mail" marking
> indicated in paragraph (a) of this section appearing on the envelope, staff may treat
> the mail as general correspondence and may open, inspect, and read the mail.

28 C.F.R. §540.18(b).  Baker is correct when he asserts that this provision speaks in the disjunctive,

but he inverts the "either/or" conditions that may be satisfied:  the provision does not *require* treatment as *special mail* when an envelope *possesses* either adequate identification or the special mail marking, rather it *permits* treatment as *general correspondence* when the envelope *lacks* either adequate identification or the special mail marking.  This interpretation is consistent with other BOP mail regulations:  the subsection immediately preceding provides that special mail "may not be read or copied if the sender is adequately identified on the envelope, and the front of the envelope is marked "Special Mail--Open only in the presence of the inmate." 28 C.F.R. §540.18(a).  The Court concludes that the BOP's interpretation of its own regulations is not merely reasonable, but manifestly correct.

Baker correctly asserts that the Sixth Circuit has held that "mail from a court constitutes 'legal mail' and cannot be opened outside the presence of [the inmate]." *Sallier v. Brooks*, 343 F.3d 868, 877 (6th Cir. 2003).  But while *Sallier* acknowledged the existence of the basic right, the promulgation and implementation of regulations to safely operate its facilities with proper accommodation for a prisoner's constitutional right remains with the BOP.  *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993) ("prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security.")  So long as the BOP's mail regulations do not unduly burden or interfere with Baker's constitutional right to have mail from a court opened in his presence, he states no constitutional claim.  *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974) (inmates' right to have legal mail opened only in their presence is subject to reasonable prison regulations); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives).  This remains the rule after *Sallier*, and the same BOP regulations at issue

-10-

in this case have been upheld as reasonable regulations on the manner of the exercise of that right. *Merriweather v. Zamora*, 2006 WL 2711809, *4 (E.D.Mich. 2006).  All of the envelopes in the present case were sent from the Clerk of the Court, in most instances indicating a court order which is a matter of public record.  The BOP treats envelopes sent from a district judge's chambers as "special mail" even without the special mail marking, to further protect against the inadvertent opening of legal correspondence intended for the prisoner's eyes only.  These mail regulations fully afford a prisoner his right to "special mail" handling under *Sallier* so long as two simple prerequisites are met.  Because such limited restrictions are fully consistent with *Wolff*, Baker has failed to establish a constitutional claim.

### 3.      Possession of Presentence Investigation Report

In mid-2002, a prison staff member provided Baker with a copy of his presentence investigation report ("PIR"), which he used as part of his efforts to obtain relief from his criminal conviction.  On Sept. 19, 2002, following amendments to 28 C.F.R. §§513.40, .44, the BOP amended Program Statement 1351.05 to prohibit an inmate from possessing his PIR.  Baker and other prisoners were advised that they must surrender or destroy any PIR in their possession before November 2002, and thereafter PIRs would be considered prohibited contraband.

In early August 2004, Baker mailed a petition for writ of *certiorari* to the Supreme Court seeking review of a denial of his motion for post-conviction relief under Section 2255.  Attached to that petition was a copy of his PIR.  When the Clerk of the Supreme Court returned that petition to Baker to correct clerical errors, prison staff discovered the PIR during a search of the envelope in his presence and confiscated it on August 24, 2004.  Program Statement 1351.05(a)(2)(d) permits a prisoner to review his PIR, but no prisoner is permitted to possess one.

Baker sought to obtain possession of his PIR by initiating the prison grievance process on September 10, 2004, which was finally denied by the Central Office on February 15, 2005.  In his complaint, Baker contends that the BOP violated the Administrative Procedures Act ("APA"), 5 U.S.C. §551 *et seq.*, by failing to give notice and an opportunity to comment as required by 5 U.S.C. §553(b), (c).[2]

The BOP regulation which forms the basis for Program Statement 1351.05 is 28 C.F.R. §513.40, which describes what information an inmate may access from his Inmate Central File and the circumstances under which he or she may review it under staff supervision.  BOP Program Statement 1351.05 does not alter the substance of this regulation.  Accordingly, the courts that have addressed identical attacks upon Program Statement 1351.05 have rejected any claim that the APA applies to the BOP's prohibition against inmates possessing their PIRs.  *Sample v. Watts*, 2004 WL 1255359, *1 (5th Cir. 2004) ("Program Statement 1351.05 did not contradict or alter any existing rule of longstanding policy or practice, ... the Administrative Procedures Act's notice and comment requirements do not apply."); *see also Gunderson v. Hood*, 268 F.3d 1149, 1151 n.2 (9th Cir. 2001) (BOP Program Statements are internal agency guidelines, interpretive rather than substantive in nature, and hence not subject to the APA's notice and comment requirements); *Koray v. Sizer*, 21 F.3d 558, 562 (3rd Cir. 1994) (same).

### 4.     Sexually-Explicit Magazines by Mail

On March 15, 2004, Baker filed an informal request with staff for permission to purchase with his own funds subscriptions to magazines "which contain or feature nudity or are sexually

---

[2] Baker also appears to allege that opening this item of mail from the Clerk of the Supreme Court violates his constitutional rights under the First, Fifth, and Sixth Amendments.  Any such claim fails for the same reasons set forth *supra* in Section Two.

explicit (but not obscene)." This request was denied pursuant to Program Statement 5266.10 ¶7, 28 U.S.C. §530C(b)(6) (the "Ensign Amendment"), and 28 C.F.R. §540.72, which prohibit the BOP from expending funds to distribute or make available to any federal prisoner a publication which is sexually explicit or contains nudity. Baker initiated the formal grievance process with the warden the same day by filing a Form BP-9, and pursued that process to its exhaustion on July 20, 2004, upon the denial of his final appeal by the BOP Central Office. Baker made a similar informal request to prison mailroom staff on March 14, 2006. In his complaint, Baker asserts that the Ensign

Amendment and the implementing BOP regulations violate his rights under the First Amendment to freedom of speech and expression.

Baker's claim regarding the defendants' March 15, 2004 refusal is barred by the one-year statute of limitations. *Wilson*, 471 U.S. at 276-80. Baker's renewed request and defendants' continued refusal on March 15, 2006, was not administratively exhausted, and Baker's failure to do so in a timely fashion bars his claim under *Ngo*, 126 S.Ct. at 2387-88.

Baker's claim would also fail on the merits. Numerous courts have held that prison officials may restrict access to sexually explicit materials consistent with the First Amendment. *Thompson v. Patterson*, 985 F.2d 202 (5th Cir. 1993). The District of Columbia Court of Appeals has upheld the Ensign Amendment against a First Amendment challenge identical to that asserted by Baker here under the factors set forth in *Turner v. Safley,* 482 U.S. 78 (1987). *Amatel v. Reno,* 156 F.3d 192, 196-202 (D.C.Cir. 1998). This Court has previously upheld the confiscation of sexually-explicit photographs under Program Statement 5265.11 against a First Amendment challenge under *Safley*. *Taniguchi v. Lappin*, 2005 WL 1334634, *7-8 (E.D.Ky. 2005) (unpublished disposition). And a

state prison rule closely similar to the one at issue here was recently upheld by the district court in

*Boyd v. Stalder*, 2006 WL 3813711, *4-5 (W.D.La. 2006).[3]   The Court concurs with the D.C. Court

of Appeals' holding that the Ensign Amendment's prohibition against a prisoner receiving sexually

explicit materials satisfies *Safley*'s requirement that the regulation be "reasonably related to

legitimate penological interests."  *Safley,* 482 U.S. at 89; *Amatel,* 156 F.3d at 196-202.

### CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1)     Baker's motion for clarification [Record No. 11] is **DENIED as MOOT.**

(2)     Plaintiff's complaint is **DISMISSED WITH PREJUDICE.**

(3)     Judgment shall be entered contemporaneously with this Memorandum Opinion and

Order in favor of the defendants.

This January 17, 2007.

---

[3] The *Boyd* court noted a circuit split regarding the necessity of developing an extensive factual record before the *Safley* factors may be assessed.  *Compare Amatel v. Reno,* 156 F.3d 192 (D.C.Cir. 1998) (extensive factual record unnecessary to perform *Turner* analysis) with *Ramirez v. Pugh,* 379 F.3d 122 (3d Cir. 2004) (case remanded to district court to analyze Ensign Amendment under *Safley* only after specific evidentiary record is developed regarding prison officials' implementation of policy).   The *Boyd* court rendered its decision on cross-motions for summary judgment, but its determination upholding the ban on publications featuring nudity or sexually explicit material was based not on material in affidavits, but upon the language of the regulation and the legitimacy of prison officials' expressed need to maintain a safe and orderly environment in the prison.  *Boyd*, 2006 WL 3813711 at *5.

    On numerous occasions the Sixth Circuit has affirmed a district court's dismissal of prisoner claims upon pre-screening under 28 U.S.C. §1915A without requiring prison officials to submit evidentiary materials in support of the regulation.  *See, e.g., Davis v. Clinton*, 2003 WL 218014476, *2 (6th Cir. 2003) (affirming district court's pre-screening dismissal of religious accommodation claim under *Safley* factors); *Williams v. McGinnis*, 1999 WL 183510 (6th Cir. 1999)(same; legal mail claim); *Skinner v. Bolden*, 2004 WL 504353, *2 (6th Cir. 2004) (same); *Pearce v. Sapp*, 1999 WL 503568 (6th Cir. 1999) (same; free exercise and free speech claims).  Accordingly, the Court concludes that it need not issue summons and require extensive factual development in all cases in which a prisoner raises a constitutional claim that must be analyzed utilizing the *Safley* factors.



Signed By:

*Henry R Wilhoit Jr.*

United States District Judge